Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - telecopier

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| SHREEDEVI AA CORPORATION | § | CASE 18-70202-11 |
| | § | |
| DEBTOR | § | |

**AMENDED PLAN OF REORGANIZATION OF SHREEDEVI AA CORPORATION DATED FEBRUARY 8, 2019**

**TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COME NOW, Shreedevi AA Corporation, Debtor and Debtor-in-Possession in the above-referenced bankruptcy cases, and proposes the following Amended Plan of Reorganization ("Plan").  The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 7 separate classes.

## ARTICLE I
**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms.  Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.  "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.  "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.  "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.  "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.  "**Bar Date**" shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.  "**Case**" shall mean this Chapter 11 case.

7.  "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. "**Claimant**" shall mean the holder of a Claim.

9. "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

13. "**Court**" shall mean the United States Bankruptcy Court for the Northern District of Texas, Wichita Falls Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14. "**Creditor**" shall mean any person having a Claim against Debtor.

15. "**Debt**" shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16. "**Debtor**" shall mean Shreedevi AA Corporation.

17. "**Disbursing Agent**" shall mean the Reorganized Debtor.

18. "**Effective Date**" shall mean thirty days after the Final Confirmation Date.

19. "**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

20. "**Equity Interest Holders**" shall mean holders of the equity interests in the Debtors.

21. "**Final Confirmation**" shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22. "**Order Confirming Plan**" shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23. "**Petition Date**" shall mean the date on which the Debtor filed this proceeding, July 2, 2018.

24.     "**Plan**" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.     "**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26.     "**Rejection Claim**" shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.     "**Reorganized Debtor**" shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.     "**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.     "**Substantial Consummation**" shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.     "**Tax Claims**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.     "**Unsecured Claim**" shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1     Claims and Debts: Various types of Claims and Debts are defined in this Plan. This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan. Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2     **Securities Laws**: The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

 2.3 **Time for Filing Claims**: With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants <u>must</u> file a proof of claim bearing the case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Wichita Falls Division, on or before the Bar Date to participate under this Plan. Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan. Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

 2.4 **Modifications to Plan**: In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

 3.1 All trade and service debts and obligations, including ad valorem taxes for year 2019, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

 3.2 Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

 4.1 Classification of Claims: This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof. Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

| | | |
|---|---|---|
| 4.2 | **Class 1**: | Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees** (Not Impaired) |
| | **Class 2**: | Consists of **Allowed Property Tax Claims** (Impaired) |
| | **Class 3**: | Consists of **Allowed Priority Internal Revenue Service Claims** (Impaired) |
| | **Class 4**: | Consists of **Allowed Priority Claims of the Texas Workforce Commission** (Impaired) |
| | **Class 5**: | Consists of **Allowed Secured Claims of Herring Bank** (Impaired) |

   **Class 6:**  Consists of **Allowed Claims of Unsecured Creditors** (Impaired)
   **Class 7:**  Consists of **Allowed Claims of Equity Holders** (Not Impaired)


# ARTICLE 5
# TREATMENT OF CLASSES

 5.1 Satisfaction of Claims and Debts:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

 5.2 **Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan.  Professional fees are subject to approval by the Court as reasonable. Debtors' attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full.  Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000 including Section 1930 fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall required to file post-confirmation operating reports until this case is closed.  The Class 1 Claimants are not impaired under this Plan.

 5.3 **Class 2 Claimants (Allowed Ad Valorem Tax Claims)** are impaired and shall be satisfied as follows: The Allowed ad Valorem Tax Creditor Claims shall be paid out of the revenue from the continued operations of the business to Wichita County. Wichita County has filed two Proofs of Claim in the total amount of $16,659.42 for real and business property taxes for year 2018.("Ad Valorem Taxes")  The Ad Valorem Taxes will receive post-petition pre-confirmation interest at the state statutory rate of 12% per annum and post-confirmation interest at the rate of 12% per annum. The Debtor will pay the Ad Valorem Taxes over a period of 60 months from the Petition Date, commencing on the Effective Date. The Debtor's monthly payment to pay the Ad Valorem Taxes will be approximately $370. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by this Plan.

 Class 2 Claimants are impaired under this Plan.


 5.4 **Class 3 Claimants (Allowed Tax Claim of the Internal Revenue Service)** are impaired and shall be satisfied as follows: The Allowed Amount of Tax Creditor Claims of the Internal Revenue Service ("IRS")shall be paid out of the continued operations of the business. The IRS has filed a Priority Tax Proof of Claim in the amount of $4,860.87. The Debtor believes this amount of be incorrect because certain returns filed by the Debtor have not been processed, however,

the Allowed IRS Priority Tax Claim will be paid in full over a 60 month period commencing on the Effective Date, with interest at a rate of 5% per annum. If allowed as filed, the monthly payment shall be approximately $92. Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

(a) If the Debtor fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(b) If the United States declares the Debtor to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

(c) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to sent two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

(d) The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(e) All payment will be sent to: Mike Smith, IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above.

The Class 3 creditor is impaired under this Plan.

5.5    **Class 4 Claimants** (**Texas Workforce Commission**) are impaired and shall be satisfied as follows: the Texas Workforce Commission ("TWC") has filed a Proof of Claim asserting a claim for unemployment tax in the amount of $348.22 of which $120.23 is asserted to be a priority claim. The Debtor shall pay the priority claim in full on the Effective Date and the balance of the TWC claim will treated as an unsecured creditor in Class 6 below.

A failure by the Reorganized Debtor to make a payment to the TWC pursuant to the terms of the Plan shall be an Event of Default. If the reorganized debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the TWC

then the TWC may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the TWC may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court. The reorganized debtor shall have the opportunity to cure two (2) times over the life of the plan. In the event of the third default, the Comptroller may proceed with the state law remedies for collection of all amounts due under state law."

Class 4 Claimant is impaired under this Plan.

5.6

**Class 5 Claimant (Allowed Claims of Herring Bank**) is impaired and shall be satisfied as follows: The Debtor executed a promissory note in favor of Herring Bank (Herring") on April 29, 2013 in the original principal amount of $200,000 ("First Note"). The First Note was secured by, among other things, a Deed of Trust of even date, securing the real property located at 4511 Rhea Road, Wichita Falls, Texas, as more fully described in the Deed of Trust (the "Property"). On March 30, 2017 the Debtor executed that certain Promissory Note in favor of Herring in the original principal amount of $8,562.92 ("Second Note"). The Second Note was secured by that certain Commercial Security Agreement, UCC-1 Financing Statement and the Deed of Trust on the Property set forth above. On April 29, 2013 the Debtor executed that certain Real Estate Lien Note in favor of Herring in the original principal amount of $93,000 ("Third Note"). The Third Note was secured by that certain Deed of Trust of even date securing that certain real property located at 1601 Monroe Street, Wichita Falls, Texas as more fully described in the Deed of Trust ("Note Three Property"). The Debtor believes the collateral securing the First Note, Second Note and Third Note is equal to the amounts on to Herring on the First Note, Second Note and Third Note. Herring shall retain its liens and all other provisions of the pre-petition loan documents of Herring shall remain in full force and effect except as modified by this Plan, until paid in full under this Plan. Debtor shall restructure the indebtedness to Herring as follows:

    a.    <u>First Note</u>. Herring shall have an Allowed Claim on the First Note in the amount of $171,803.10. This amount shall be repaid commencing on the Effective Date in amortization of 240 months. The First Note shall be repaid as follows: The Debtor shall make 36 equal monthly payments commencing on April 1, 2019 through March 1, 2022 with interest at the rate of 5.95% per annum. On March 1, 2022, the interest rate applicable to the First Note will adjust to a rate equivalent to the then published Wall Street Journal ("WSJ") Prime Rate plus 1%, however, this adjusted rate shall not be lower than 5.95%. The Debtor shall thereafter make 36 equal monthly payments at such adjusted interest rate for the monthly payments due from April 1, 2022 through March 1, 2025. On March 1, 2025, the interest rate applicable to the First Note will adjust to a rate equivalent to the then published WSJ Prime Rate plus 1%, however, this adjusted rate shall not be lower than 5.95%. The Debtor shall thereafter make 36 equal monthly payments at such adjusted interest rate for the monthly payments due from April 1, 2025 through March 1, 2028. On March 1, 2028, the interest rate applicable to the First Note will adjust to a rate equivalent to the then published WSJ Prime Rate plus 1%, however, this adjusted rate shall not be lower than 5.95%. The Debtor shall thereafter make 1 monthly payment at such adjusted interest rate for the monthly payment due on April 1, 2028. The Debtor shall then make 1 payment with interest at such adjusted interest rate on or before May 1, 2028 of all remaining principal and interest on the First Note.

    b.    <u>Second Note</u>. Herring shall have an Allowed Claim on the Second Note in the amount of $8,652. This amount shall be ~~repay~~ repaid commencing on the Effective Date in 36

equal monthly payments with interest at the rate of 5.5% per annum, with the first payment due on April 1, 2019 and the last payment due on March 1, 2022.

      c.     <u>Third Note.</u> Herring shall have an Allowed Claim on the Third Note in the amount of $78,087.21. The Debtor shall make 36 equal monthly payments commencing on April 1, 2019 through March 1, 2022 with interest at the rate of 5.95% per annum. On March 1, 2022, the interest rate applicable to the Third Note will adjust to a rate equivalent to the then published WSJ Prime Rate plus 1%, however, this adjusted rate shall not be lower than 5.95%. The Debtor shall thereafter make payments 36 equal monthly payments at such adjusted interest rate for the monthly payments due from April 1, 2022 through March 1, 2025. On March 1, 2025, the interest rate applicable to the Third Note will adjust to a rate equivalent to the then published WSJ Prime Rate plus 1%, however, this adjusted rate shall not be lower than 5.95%. The Debtor shall thereafter make 36 equal monthly payments at such adjusted interest rate for the monthly payments due from April 1, 2025 through March 1, 2028. On March 1, 2028, the interest rate applicable to the Third Note will adjust to a rate equivalent to the then published WSJ Prime Rate plus 1%, however, this adjusted rate shall not be lower than 5.95%. The Debtor shall thereafter make 1 monthly payment at such adjusted interest rate for the monthly payment due on April 1, 2028. The Debtor shall then make 1 payment at such adjusted rate on or before May 1, 2028 of all remaining principal and interest on the Third Note.

     Class 5 is impaired under this Plan.

     5.7    **<u>Class 6 Claimants(Allowed Unsecured Creditors</u>**) are impaired and shall be satisfied as follows: All allowed unsecured creditors shall share pro rata in the unsecured creditors pool. The Debtor shall make monthly payments commencing on the Effective Date of $250 into the unsecured creditors' pool. The Debtor shall make distributions to the Class 6 creditors every 90 days commencing 90 days after the Effective Date. The Debtor shall make a payments until all Allowed unsecured claims are paid in full.

     The Class 6 creditors are impaired.

     5.8    **<u>Class 7 (Current Shareholders)</u>** are not impaired under the Plan and shall be satisfied as follows: The current shareholders will receive no payments under the Plan, and the current stockholders shall retain their existing interests.

     Class 7 Claimants are not impaired under the Plan.

**ARTICLE 6**
**<u>MEANS FOR EXECUTION OF THE PLAN</u>**

     6.1    **<u>Action to be taken:</u>** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

6.2     **Ongoing Operations:** The Debtor's obligations under this Plan will be satisfied out of the ongoing operations of the Reorganized Debtor. The income projections of the Reorganized Debtor are attached to the Disclosure Statement. The Debtor believes the projections to be accurate based upon current operations. The Debtor does not intend to dramatically alter the current expenses and has projected only moderate growth over the Plan term.

6.3     Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

## ARTICLE 7
## SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

## ARTICLE 8
## STATUS OF EXECUTORY CONTRACTS

8.1     All unexpired leases and executory contracts shall be assumed on or before the Effective Date.  To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or  Court Order prior to the Effective Date, they are rejected The Debtor's current lease agreement on the Monroe stor is specifically assumed by this Plan.

## ARTICLE 9
## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

9.2     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor

9.3.     Default shall occur if one scheduled Plan payment is not made by Debtor or if current taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent to Anil Parikh  940-704-2847. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

## ARTICLE 10
## DISCHARGE

10.1     Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2     The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE 11
## AMENDMENTS TO THE PLAN

11.1     Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11.  The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2     In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

## ARTICLE 12
## EFFECT OF CONFIRMATION

12.1     The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

  12.2 All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

  12.3 All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

  12.4 All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

  13.1 The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

  13.2 Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

  13.3 Any caption herein is for convenience only and does not affect the construction of the Plan.

  13.4 Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

  Until this case is closed, the Court retains jurisdiction of the following matters only:

  14.1 To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

  14.2 To allow or disallow Claims.

  14.3 To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

14.4    To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5    To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6    To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

14.7    To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8    To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9    To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10    To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11    To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12    To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13    To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14    To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.


                                        Respectfully submitted,

                                        Shreedevi AA Corporation


                                         /s/ Anil Parikh_____
                                        By: Anil Parikh
                                        Its: President

ERIC LIEPINS, P.C.
ERIC LIEPINS
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972)991-5591
(972) 991-5788 - telecopier